UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FRED DANIEL REEVES, JR., #241575

    Plaintiff,

v

PAUL WILLIAM JENSEN, "ET AL,"[1]

    Defendant.
                                      /

Case No. 5:04-cv-194

Hon. Wendell A. Miles


OPINION AND ORDER ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT


    This is a civil rights action filed by a Michigan prisoner under 42 U.S.C. § 1983. Although plaintiff filed the action *pro se*, he is currently represented by appointed counsel. In his first amended complaint, plaintiff alleges that defendant Paul William Jensen, a prison guard, retaliated against him for exercising his First Amendment rights by threatening to destroy and actually destroying plaintiff's prescription medications.

    The matter is currently before the court on a motion by defendant Jensen for summary judgment (docket no. 171). Plaintiff has filed a written response opposing the motion (docket no. 174). For the reasons to follow, the court **GRANTS** the motion.

---

[1] Plaintiff has used the phrase, "ET AL" in the caption of his first amended complaint. However, it is not known to the court to whom the phrase refers, insofar as the body of the pleading refers to only one defendant, Paul William Jensen. It therefore appears that "ET AL" was likely used in error.

**I**

Plaintiff is a prisoner incarcerated within the Michigan Department of Corrections ("MDOC"). He is currently housed at the Marquette Branch Prison. Plaintiff, who is 44 years old, suffers from gastric reflux disease, hypertension (high blood pressure), angina (chest pain), and asthma. He uses various medications for his health conditions, including inhalers and nitroglycerin pills.

In September, 2002, plaintiff filed a lawsuit in the Eastern District of Michigan. The complaint asserted various claims under 42 U.S.C. § 1983 against Jensen and 26 other MDOC employees. Plaintiff's claim against Jensen consisted of an allegation that Jensen and another guard had destroyed a piece of plaintiff's legal mail. On December 19, 2002, the court issued an order granting a motion by the defendants to transfer the case to this district. On March 14, 2003, the case was dismissed for lack of exhaustion. See Reeves v. Overton, No. 1:02cv949 (Judgment, docket no. 63).

On February 12, 2003, while that action was still pending, plaintiff was housed at the Ionia Maximum Correctional Facility ("I-MAX"). Plaintiff alleges that that day, Jensen came to plaintiff's cell. According to plaintiff, Jensen threatened to throw away plaintiff's asthma inhaler and nitroglycerin pills in retaliation for plaintiff's filing of the lawsuit naming Jensen as a defendant.

Although plaintiff apparently did not take the threat seriously,[2] he alleges that he later discovered that Jensen had carried out his threat. According to plaintiff, later that same day guards used chemical agents on the prisoner housed in the cell next to plaintiff's.[3] Shortly after the chemicals were used in the adjoining cell, plaintiff alleges, he began to experience an asthma attack and chest pains.

It is undisputed that plaintiff requested medical treatment for his alleged symptoms. Paul Osborne, a registered nurse at I-MAX, has testified that he assessed plaintiff at his cell, taking his vital signs, including his blood pressure, pulse, and respirations. Osborne has also testified that he obtained plaintiff's inhalers from the unit "bubble," or officers' station, where they were kept. Osborne's testimony and progress notes further indicate that plaintiff used his inhaler as prescribed and also took two nitroglycerin pills. Osborne left plaintiff resting comfortably. It is undisputed that Osborne noted no severe distress through plaintiff's vital signs. (Proposed) Final Pretrial Order (docket no. 187) at 4, ¶ 2 (Uncontroverted Facts).

Plaintiff's version of the response to his request for treatment differs somewhat from Osborne's. According to plaintiff, he was taken from his cell for "emergency" medical

---

[2]In an earlier action which plaintiff filed concerning this incident, plaintiff alleged that he paid little attention to Jensen's purported threat because Jensen was "constantly" harassing him. Reeves v. Smith, 4:03cv50, Complaint (docket. no. 1), at 28. That action was dismissed for lack of exhaustion. Id., Judgment and Injunction (docket no. 233), March 31, 2004.

[3]All of the prisoners at I-MAX are considered management risks, for various reasons. Given this risk, all of the cells at I-MAX are enclosed, having one window to the outside. The doors on the cells are solid heavy steel sliding doors. Each cell door has a food slot covered by a metal flap which can be opened and closed by corrections officers outside the cell.

3

treatment, at which point it was discovered that his medication containers were empty.  Plaintiff contends that he was in "physical and emotional distress" for an unspecified period of time until health care staff could locate medications to treat him.

The evidence suggests that Jensen might have had a motive for retaliation against plaintiff apart from the then-pending lawsuit.  As part of an investigation into a grievance which plaintiff had filed, plaintiff was apparently inadvertently provided with a document containing Jensen's social security number.  Early on the morning of February 12, 2003, the same day plaintiff alleges his medications were missing, Jensen issued a major misconduct against plaintiff for threatening to use the number and for threatening the lives of both Jensen and his family. Plaintiff does not deny that he had access to Jensen's social security number and that he had at some point implied that he might be willing to use it.

Plaintiff is a prolific litigator.  Since February, 2001, he has been the plaintiff in 52 lawsuits filed in this district, and at least eight in the Eastern District of Michigan.[4]  (At least some of the latter cases, such as <u>Reeves v. Overton</u>, appear to have been transferred to this court.)  On March 31, 2004, the Chief Judge of this district issued an injunction against plaintiff,

---

[4]Plaintiff's amended complaint states that he has "filed several lawsuits while incarcerated" and refers to an "Attachment A."  First Amended Complaint,¶ 4.  Notwithstanding this statement, it is noted that there is in fact no "Attachment A" on file with the amended complaint.  However, it is proper for the court to take judicial notice of the other actions plaintiff has filed in this court.  <u>See</u> <u>United States v. Doss</u>, 563 F.2d 265, 269 (6th Cir. 1977) (taking judicial notice of court's own record is wholly consistent with the provisions of Fed.R.Evid. 201). The court may also take judicial notice of court records on file in the Eastern District of Michigan.  <u>See</u> <u>Granader v. Public Bank</u>, 417 F.2d 75, 82 (6th Cir. 1969) ("Federal courts may take judicial notice of proceedings in other courts of record").

which requires him to comply with a number of conditions before filing lawsuits in this court and places restrictions on plaintiff's conduct of actions once filed.  Of the 52 lawsuits which have been filed in this district, 50 of those lawsuits have been filed since February 12, 2003, the date on which plaintiff alleges the retaliatory incident at issue in this case took place.

Plaintiff filed his pro se complaint in this action on November 5, 2004, naming four MDOC officers as defendants, including Jensen.  Three of these defendants -- those who plaintiff alleged were involved in failing to remove him from his cell before the use of chemical agents -- were dismissed from the case on a motion which the defendants filed early in the case.  Only the claims against Jensen survived.  The court ultimately appointed counsel for plaintiff, who filed an amended complaint naming only Jensen as a defendant.  Discovery has concluded.

## II

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In evaluating a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The party moving for summary judgment bears the burden of establishing the non-existence of any genuine issue of material fact and may

satisfy this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  While inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only factual disputes which may have an effect on the outcome of a lawsuit under the applicable substantive law are "material." See Anderson, 477 U.S. at 247-248 ("the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact").  "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." Hartsel v. Keys, 87 F.3d 795, 799 (6th Cir. 1996).

**III**

In his motion, Jensen argues that he is entitled to summary judgment because there is no genuine issue of material fact as to the following:  (1) whether plaintiff's inhaler and nitroglycerin pills were thrown away; (2) whether Jensen was responsible for emptying or throwing away these medications; (3) whether plaintiff suffered any injury; and (4) whether Jensen retaliated against plaintiff for his filing of the lawsuit in December, 2002.

At the outset, it is noted that plaintiff argues that based on the court's previous rulings, including the Report and Recommendation ("R & R") of the United States Magistrate Judge issued on July 6, 2005 and the Order approving that R & R entered on August 30, 2005, plaintiff's claim against Jensen has already survived summary judgment and, absent new evidence, the court should not revisit the issues. However, although the law has not changed since the previous rulings, additional facts have been developed, insofar as the earlier rulings were made before discovery. Indeed, each of the parties relies on evidence produced more recently in the case, including depositions. Because new evidence has been submitted, the court revisits its decision.

Plaintiff's only claim against Jensen is one of retaliation based on the First Amendment. Case law recognizes that retaliation based upon a prisoner's exercise of his constitutional rights violates the First Amendment. See Thaddeus-X v. Blatter, 175 F.3d 378, 393-394 (6th Cir. 1999). Sixth Circuit precedent holds that a retaliation claim "essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Id. However, this formula is only a general one, and will yield variations in different contexts. Id. Where retaliation is claimed, "[c]ontext matters." See Burlington Northern and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006) (addressing retaliation provision contained in Title VII of

the Civil Rights Act). Standards for determining retaliation must be phrased "in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances." Id. In particular, analysis of the second element – adverse action – must be tailored to the circumstances of the specific retaliation claim. Mezibov v. Allen, 411 F.3d 712, 721 (6th Cir. 2005).

The first element of plaintiff's retaliation claim requires plaintiff to show that he engaged in protected conduct. Jensen does not argue that this element is not satisfied. Therefore, for purposes of deciding Jensen's motion, the court assumes that this element is not in dispute.

Skipping – for the moment – the second element of plaintiff's claim, the court also concludes that plaintiff has, for purposes of summary judgment, satisfied the third element of his claim, which requires him to establish a causal connection between his protected conduct and Jensen's adverse action. Although Jensen's motion does not directly address the issue of causation, he does argue that he not only never threatened plaintiff, but also that he did not know that plaintiff took medication and that in any event he would never threaten to throw away anyone's medication.

Retaliation is rarely supported with direct evidence of intent, Harbin-Bey v. Rutter, 420 F.3d 571, 580 (6th Cir. 2005), and this case is no exception. Although plaintiff has not pointed to any direct evidence of intent, the question is one of circumstantial evidence of intent insofar as plaintiff's legal action against Jensen and other MDOC defendants was pending at the time of the alleged adverse action. This timing, therefore, provides some evidence of causation,

notwithstanding the existence of evidence that Jensen (if he retaliated at all) did so for other reasons – such as plaintiff threatening to misuse Jensen's social security number.

Plaintiff faces the greatest obstacle in satisfying the second element of his retaliation claim, which requires him to establish that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in protected conduct. Consistent with the recognition that context is important, recent cases have suggested that a "person of ordinary firmness" refers specifically to a person in the position of a prison inmate. See Thomas v. Eby, 481 F.3d 434, 441 (6th Cir. 2007) ("Because inmates convicted of major-misconduct charges lose their ability to accumulate disciplinary credits for that month, *inmates of ordinary firmness* would be more reluctant to engage in protected conduct that may lead to the retaliatory issuance of misconduct tickets") (emphasis supplied); see also Siggers-El v. Barlow, 412 F.3d 693, 701 (6th Cir. 2005) (a reasonable trier of fact could conclude that retaliatory transfer "would deter *a prisoner of ordinary firmness* from continuing to engage in protected conduct") (emphasis supplied). "[P]risoners are expected to endure more than the average citizen[.]" Siggers-El, 412 F.3d at 701. Given the relevance of context, the question is whether a reasonable prisoner would have found the retaliatory action materially adverse, meaning that it might well have dissuaded him from engaging in protected conduct.

"Normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." Burlington Northern, 126 S.Ct. at 2415. The Constitution "does not provide an avenue of redress for de minimis events in the life of an inmate." Dean v. Conley, 20

9

Fed. Appx. 294, 296, 2001 WL 1141330, at *2 (6th Cir. Sept. 17, 2001). Instead, the plaintiff's burden is "to establish the factual basis for his claim that the retaliatory acts amounted to more than a de minimis injury." Bell v. Johnson, 308 F.3d 594, 606 (6th Cir. 2002).

Jensen argues that this crucial second element is not satisfied because plaintiff has at best shown only that his claim is based on an unrealized threat to deprive plaintiff of his medications. Jensen argues that plaintiff cannot base a claim for a First Amendment violation on an unrealized threat.

Jensen is correct that a mere threat to violate a constitutional right is not actionable under § 1983. Fear of spoken words is not an actual infringement of a constitutional right. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). Only an actual violation of a constitutional right may be redressed under § 1983. Macko v. Byron, 760 F.2d 95, 97 (6th Cir. 1985). "Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation." Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983).

Plaintiff concedes that he "is not asserting that fear itself is an actionable harm." Plaintiff's Response at 8. Instead, he argues, "[t]he actionable harm in this case is that the fear instilled in [plaintiff] by Jensen's threat would deter a person of ordinary firmness from engaging in protected activity." Id. The court fails to grasp the significance of this distinction. Sixth Circuit case law requires a plaintiff to establish, as an element of a First Amendment retaliation claim, that the defendant took adverse ***action*** against the plaintiff which would deter a person of ordinary firmness from continuing to engage in protected conduct. Thaddeus-X, 175 F.3d at

10

394, 396.[5]  A threat is not action; it is merely a threat, no matter what deterrent effect it has or does not have.  Retaliation offends the Constitution because "it threatens to inhibit the exercise of the protected right." Crawford-El v. Britton, 523 U.S. 574, 588 n. 10, 118 S.Ct. 1584, 1592 n.10 (1998).  "Bare allegations of malice [do] not suffice to establish a constitutional claim." Id. Instead, a § 1983 plaintiff "must show a causal connection between a defendant's retaliatory animus *and subsequent injury* in any sort of retaliation action[.]"  Hartman v. Moore, 547 U.S. 250, 126 S.Ct. 1695, 1703 (2006) (emphasis supplied).

Plaintiff also argues that his claim is sufficient because Jensen took action on his threat, in the form of actually destroying or otherwise tampering with plaintiff's medication.  However, evidence that plaintiff was deprived of his medications at the time in question is scant at best. Although plaintiff has testified that he saw Jensen tampering with his inhaler on February 12, 2003,[6] the evidence is undisputed that even if plaintiff's medications were not available on the unit when he experienced his reaction to the chemicals used in the neighboring cell (as plaintiff asserts in an unsigned affidavit attached to his response brief), the medications were made available to plaintiff shortly thereafter.  In addition, by the time nurse Osborne checked

---

[5]At least one other circuit has recognized that verbal harassment does not amount to evidence of adverse action sufficient to establish a First Amendment retaliation claim.  See Naucke v. City of Park Hills, 284 F.3d 923, 928 (8th Cir. 2002) (harassing comments were insufficient to deter person of ordinary firmness from speaking out, and record reflected that plaintiff continued to speak out on numerous occasions).

[6]Plaintiff has testified that other prisoners also witnessed Jensen tamper with plaintiff's medication.  However, plaintiff has not provided either affidavits or deposition testimony of these persons, and his characterization of what these other persons have said is hearsay.
Plaintiff also argues that there is evidence that one of his inhalers had to be refilled on the date of the incident, which he argues permits the inference that the inhaler was empty that day. However, this medication evidence does not in itself permit an inference that Jensen emptied plaintiff's inhaler.

11

plaintiff's vital signs, he noted no severe distress, and even though plaintiff complained of chest pain he had no other apparent symptoms.

Although there is no dispute that if plaintiff suffered an asthma attack and angina pains, these conditions were brought on by the use of chemical agents, and not as a result of anything done by Jensen. Therefore, any question of physical injury pertinent to plaintiff's claim against Jensen arises only from the alleged temporary deprivation of plaintiff's medication.

Even though plaintiff has presented minimal evidence – in the form of his own testimony – that Jensen took some "action" on his alleged threat by tampering with plaintiff's inhaler, and even if one assumes that a fact finder would credit this evidence,[7] two factors combine to require a conclusion that Jensen's acts were not sufficiently adverse as a matter of law to deter a reasonable prisoner from engaging in protected conduct. The first consists of the undisputed facts that plaintiff was both (1) examined by a nurse after the gassing incident and found to be in no severe distress per his vital signs, and (2) provided with his medications in response to his subjective complaints of chest pains and difficulty breathing. See (Proposed) Final Pretrial Order (docket no. 187) at 4, ¶ 2 (Uncontroverted Facts). The evidence shows that plaintiff's medications were not kept in his cell at the time of the incident; he had to ask when he needed them. (This amounts to an ordinary incident of prison life.) Even assuming that the medications

---

[7]Jensen argues that plaintiff's credibility as a witness is clearly questionable. Citing the Supreme Court's recent decision in Scott v. Harris, 127 S.Ct. 1769, 2007 WL 1237851 (U.S. Apr. 30, 2007), Jensen argues that plaintiff's testimony alone is not enough to contradict a record which does not support his claim. However, the Court in Scott reversed a decision denying qualified immunity. Because Jensen's current motion does not raise the issue of qualified immunity, this case is distinguishable from Scott. In addition, the Court in Scott had a videotape which contradicted the plaintiff's version of events. Here, the court has not been presented with a videotape. Instead, the court has medical evidence indicating that even if plaintiff's testimony is true, he was not significantly harmed by Jensen's actions.

were not available on the unit because someone had tampered with them, the medical staff was capable of making them available to plaintiff when he needed them. There is no indication that a minor delay in administration of the medications adversely affected plaintiff's medical condition, even if it temporarily affected his comfort.

In addition, although plaintiff need not show that he was actually deterred from exercising his right to free speech, he must show that Jensen's actions were capable of deterring a prisoner of ordinary firmness from exercising his right of access to the courts. Thaddeus-X, 175 F.3d at 398. "A chilling effect sufficient under this prong is not born of de minimis threats or 'inconsequential actions[.]'" Center for Bio-Ethical Reform, Inc. v. City of Springboro, 477 F.3d 807, 822 (6th Cir. 2007) (citation omitted). Here, however, plaintiff has made no showing that Jensen's alleged acts caused him more than a de minimis injury.[8] In fact, in his response brief, plaintiff does not dispute that he did not suffer any significant injury even assuming that he was temporarily deprived of his medications.[9] Therefore, the second factor which leads to the

---

[8]In the Eighth Amendment context, an inmate who complains that a delay in medical treatment rises to a constitutional violation must satisfy the object component of his claim by placing verifying evidence in the medical record to establish the detrimental effect of the delay. Napier v. Madison County, Ky., 238 F.3d 739, 742 (6th Cir. 2001). Here, plaintiff's failure to show more than a de minimis injury based on the alleged delay in receiving his medications leads to the conclusion that he suffered at most only a minor inconvenience which would not deter a reasonable prisoner from exercising his First Amendment rights.

[9]In a somewhat related vein, Jensen argues that because plaintiff suffered at most only de minimis injury, he cannot collect any damages for the emotional distress that he alleges he suffered. In response, plaintiff argues that the issue of whether his physical injury was de minimis "has no bearing on his First Amendment retaliation claim." Plaintiff's Response at 4. For the reasons stated in this decision, the court disagrees with plaintiff's statement. In addition, however, it is noted that in all prisoner civil rights cases, the degree of injury is highly relevant to issues of compensatory damages and attorneys' fees. Title 42 U.S.C. § 1997e(e) expressly prohibits recovery for "mental or emotional injury suffered while in custody without a prior

(continued...)

conclusion that Jensen's alleged acts were not sufficiently adverse to support a retaliation claim is plaintiff's actual response to Jensen's actions.

Plaintiff has failed to allege or present any facts that show that he has been in any way deterred from exercising his constitutional right to file lawsuits. Plaintiff has in fact filed dozens of lawsuits since the incident at issue in this case. Although Thaddeus-X makes clear that the adverseness inquiry is an objective one which does not depend upon how the particular plaintiff reacted, see Bell, 308 F.3d at 606; see also Thomas, 481 F.3d at 441 (rejecting the argument that later filing of complaints against challenged action demonstrates that the challenged action was not sufficiently adverse), certainly the plaintiff's response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity. Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); see Smith v. Plati, 258 F.3d 1167, 1177 (10th Cir. 2001) (plaintiff's "persistence" in the face of alleged retaliation "offered some evidence" that defendant's actions did not prevent plaintiff's private speech); see also Naucke v. City of Park Hills, 284 F.3d 923, 928 (8th Cir. 2002) (defendants' harassing comments were insufficient to deter person of ordinary firmness from speaking out; indeed, record reflected that plaintiff "continued to speak out . . . on numerous occasions"). Here, nothing in Jensen's alleged actions has made it more difficult for plaintiff to file actions

---

[9](...continued)
showing of physical injury." Case law construing the statute tends to reflect the view that although the predicate injury need not be significant, it must be more than de minimis. See, e.g., Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (plaintiff's alleged injury – a sore, bruised ear lasting for three days – was de minimis and did not support a valid Eighth Amendment claim for excessive use of force nor did plaintiff have the requisite physical injury to support a claim for emotional or mental suffering). In addition, 42 U.S.C. § 1997e(d)(2), although awkwardly worded, allows an award of attorney fees for only 150 percent of the damages award. Royal v. Kautzky, 375 F.3d 720, 725 (8th Cir. 2004); Walker v. Bain, 257 F.3d 660, 667 (6th Cir. 2001).

complaining of his treatment in prison; instead, it is solely other legal factors which have made it more difficult for plaintiff to file suit. In addition, if the number of lawsuits which continue to be filed by prisoners is any indication, it suggests that prisoners in general are not easily deterred from exercising their First Amendment rights.

Because "§ 1983 is a tort statute, we must be careful to ensure that real injury is involved, lest we 'trivialize the First Amendment' by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights were actually deterred." Mezibov, 411 F.3d at 721 (citation omitted). "The purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights." Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006). "Some acts, though maybe motivated by retaliatory intent, are so de minimis that they would not deter the ordinary person from further exercise of his rights. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." Id.

The retaliatory act alleged in this case resulted in no real injury to the plaintiff and certainly did not deter him from becoming one of the most – if not the most – prolific prisoner litigators in this district. It would trivialize the First Amendment to conclude that an empty threat of the type allegedly made by Jensen in this case would have deterred a prisoner from exercising his the right to file lawsuits. It clearly did not deter plaintiff, who got his medicine despite any alleged retaliatory tampering by Jensen. There is no evidence that any temporary delay plaintiff experienced in getting his medicine was harmful to him in any manner other than to prolong the discomfort created by the gassing of the adjacent cell. Because any retaliation committed by Jensen proved to be inconsequential given the undisputed facts and other evidence

15

of record, Jensen is entitled to summary judgment in his favor on plaintiff's First Amendment claim.

## CONCLUSION

The motion is GRANTED.

So ordered this 17th day of May, 2007.

    /s/ Wendell A. Miles
Wendell A. Miles, Senior Judge